UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| DENVER LEDDINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6 :05-70-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DELTA NATURAL GAS CO., INC., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of Defendant Delta Natural Gas Company's Motion for Summary Judgment [Record No. 12]. The motion has been fully briefed, and is now ripe for consideration. Because the Court finds there are no material facts in dispute, and because the Court concludes that the Defendant is entitled to judgment as a matter of law, the motion will be granted and this action will be dismissed from the Court's docket.

## I.     BACKGROUND

Denver Leddington worked for Delta Natural Gas Company, Inc. (Delta) from February 1, 1980, until his retirement on December 1, 2002. [Record No. 12] Leddington worked out of Delta's Barbourville office, servicing a 23.4 mile area within Knox County, Kentucky, including Barbourville, Flat Lick, Girdler, Stinking Creek, Heidrick and Bryants Store (the Service Area). [Record No. 12, 14] His duties included setting and reading meters and responding to customer complaints. [Record No. 12] Leddington was also required to be on-call one week a month, but

-1-

was permitted to switch his on-call time among other servicemen, either for specific days or the entire period.  *Id.*

While he was on-call, Leddington was required to carry a beeper and remain within the service area.  If he received a page during this period, Leddington was required to call Delta within 10 minutes.  At that point, he would be receive a service assignment, and if away from home, return home to pickup his Delta service truck.  Leddington was paid for the time spent on the service call, as well as the time traveling to and from the call.  However, he was not paid for time spent on-call but not working.  [Record No. 12, 14]

While on-call, Leddington was free to spend his time as he saw fit, except that he was required to remain within the service area (which included his home).  For example, Leddington was able to attend church, visit friends, work on his farm or the farms of others, and shop at his local stores.  He was also allowed to fish or hunt, provided he did so within the service area.  And while he was required to return service pages within 10 minutes, he was never disciplined for returning the page outside this time window.  [Record No. 12]

Leddington was on-call 91 days in 2000, 91 days in 2001 and 98 days in 2002.  During 2000,  he was called-out 24 times on 19 days for a total of 27.5 hours.  During 2001, he was called-out 19 times on 19 days for a total of 23 hours.  During 2002, he was called-out 18 times on 12 days for a total of 22 hours.  [Record No. 12]

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

"Once a moving party has met its burden, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Keeneland Ass'n, Inc. v. Earnes*, 830 F.Supp. 974, 984 (E.D.Ky. 1993), *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415 (6th Cir. 2002).

Once the movant has satisfied this burden, the non-movant must go beyond the assertions made in the pleadings and come forward with specific evidence to demonstrate that there is a genuine issue of material fact. *Id.* The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence, such as sworn affidavits to support its claims. *Celotex*, at 324. However, the trial court does not have a duty to search the entire record to establish that it is bereft of any genuine issue of material fact. *In re Morris*, 260 F.3d 654 (6th Cir. 2002). Rather, the nonmoving party has an affirmative

obligation to direct the court's attention to those specific portions of the record upon which it seeks to rely to create genuine issues of material fact. *Id.*

In making this determination, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

### III.    ANALYSIS

#### A.    The Federal Claims

The Supreme Court has long recognized that the question of whether on-call time constitutes "working time" compensable under the Fair Labor Standards Act ("FLSA"), 29 C.F.R. §785.17, is a particularly difficult one.  Although "no principle of law found either in the statute or in Court decisions precludes waiting time from also being working time[,] we cannot . . . lay down a legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time." *Skidmore v. Swift & Co.*, 323 U.S. 134, 136 (1944).   In interpreting this decision, the Ninth Circuit has noted that, despite this difficulty, there are really only two possible outcomes: "[f]acts may show that the employee was 'engaged to wait,' which is compensable, or they may show that the employee 'waited to be engaged,' which is not compensable." *Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers*, 971 F.2d 347, 350 (9th Cir. 1992) (quoting *Skidmore*, 323 U.S. at 137).

In determining whether an employee spent the uncompensated hours of each on-call week being "engaged to wait," (and therefore working within the meaning of the FLSA) or simply "waiting to be engaged" (and therefore not working), the Supreme Court has directed courts to

"scrutinize and construe the agreements between the particular parties, parties their practical construction of the working agreement by conduct, consider the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances." *Skidmore*, 323 U.S. at 137. Recent cases have emphasized that "the two predominant factors in determining whether an employee's on-call waiting time is compensable overtime are: (1) the degree to which the employee is free to engage in personal activities; and (2) the agreements between the parties." *Berry v. County of Sonoma*, 30 F.3d 1174, 1180 (9th Cir. 1994)

Both parties agree that the question of whether on-call time is compensable is governed by *Martin v. Ohio Turnpike Commission*, 968 F.2d 606 (6th Cir. 1992). In *Martin*, the Sixth Circuit noted that to show that on-call time should be compensable, the employee might show (1) "the employer calls them back so frequently as to make effective use of the time impractical [or (2)] the employees could show [] that the employer's on-call system is so distracting or cumbersome as to seriously inhibit personal activities." *Martin* at 611.

More recently, the Sixth Circuit has noted that the instances in which on-call time is compensable is limited.

> Indeed, the relatively few cases that have held on-call time compensable involved a significantly greater intrusion on employees than exists in this case. *See, e.g., Bright v. Houston Northwest Medical Center Survivor, Inc.*, 934 F.2d 671, 678-79 (5th Cir. 1991) (employee on call 24 hours a day, 365 days a year, must always be sober and within 20 minutes of work); *Cross v. Arkansas Forestry Comm'n*, 938 F.2d 912, 916-17 (8th Cir. 1991) (employees required to monitor noisy hand-held radio 24 hours per day, forcing them to concentrate on radio all day and preventing them from going anywhere noise would be unwelcome).

*Aiken v. City of Memphis*, 190 F.3d 753, 761 (6th Cir. 1999).

Here, Leddington testified that he spent much of his on call time on the same activities in which he engaged when he was not on-call, including working on his farm, working on the farms of others, going to church, visiting friends, and shopping at his usual stores.  In his response to the motion of summary judgment, Leddington argues that being "confined" to the service area (*i.e.*, his home county) is so onerous a restriction as to qualify for compensation. Leddington argues that he was not free to frequent stores and restaurants in Lexington or Knoxville, or make emergencies trips to London or Corbin if the need arose.  However, there is no evidence in the discovery material, nor any suggestion in the complaint, that these were usual activities for Leddington which were restricted by his being on-call one week a month. Moreover, while being "confined" to Knox County during his on-call time may prevent Leddington from buying "quality draperies, quality bedding or quality clothing" [Record No. 14, pg. 6], the Sixth Circuit, in *Martin*, makes clear that only a minor intrusion is insufficient. Instead, the court concluded that

> the plaintiffs' evidence does not establish a genuine  issue of material fact.  The fact that some of the plaintiffs' activities have been affected by the policy is not sufficient to make the on-call lime compensable.  The plaintiffs must show that the policy is so onerous as to prevent them from effectively using their free time for personal pursuits.  That some of the plaintiffs' personal activities may be affected is not enough.

*Martin*, 968 F.2d at 611

Neither does the record demonstrate that the frequency of call-outs was such that they imposed a significant intrusion on Leddington's personal enjoyment of his on-call time.  By Leddington's calculation, he was on-call for 1,631.15 hours during 2000.  He does not dispute Delta's records which show he was called-out for a total of 27.5 hours during that year.  Thus,

during 2000, Leddington was actually working 1.7% of the time he was on-call. The same calculations for 2001 and 2002 yield results of 1.4% and 1.2% respectively. Similarly, the level of intrusion can be evaluated according to the number of days he was actually called-out while he was on-call. During 2000, Leddington was called-out 19 of the 91 days he was on-call (21%). During 2001, the numbers were 19 of 91 (21%) and during 2002, 12 of 98 (12.2%).

In summary, Leddington has failed to plead or offer proof to support that any restrictions on his personal time during the on-call period which would be compensable under the FLSA. The Court concludes that being called to work one day out of five is not a significant enough intrusion to entitle Leddington to be compensated for his time spent on-call. Further, the interruptions were not so frequent as to constitute a significant intrusion.

### B.    State Law Claims

Leddington urges that this Court not exercise supplemental jurisdiction over his state law claims, arguing that because the statute of limitations for the state law claims is longer than the federal claims, that exercise of jurisdiction would be inappropriate. However, because this Court has, by reaching the merits of the motion, in effect given Leddington the benefit of the doubt as to the statute of limitations, it need not decline jurisdiction over the state law claims. Moreover, as Delta correctly notes, the Kentucky regulations on this matter are quite similar to the federal regulations. *Spellman v. Fiscal Court of Jefferson County*, 574 S.W.2d 342 (Ky. App. 1978) As such, the Court will exercise supplement jurisdiction and grant summary judgment as to Leddington's state law claims.

### IV.    CONCLUSION

For the reasons discussed herein, it is hereby **ORDERED** as follows:

(1)     Delta Natural Gas Co., Inc.'s Motion for Summary Judgment is **GRANTED** [Record No. 12];

(2)     The pretrial conference and trial previously scheduled are **CANCELLED** and **SET ASIDE**.

(3)     This action is **STRICKEN** from the Court's active docket.

This 28th day of December, 2005.

Signed By:

*Danny C. Reeves*    DCR

United States District Judge